# IN THE UNITED STATES DISTRCT COURT
## FOR THE DISTRICT OF ALASKA

**RECEIVED**

APR 1 5 2015

**CLERK**, U.S. DISTRICT COURT
JUNEAU, ALASKA

Gordon Warren Epperly
P.O. Box 34358
Juneau, Alaska 99803

Tel: (907) 789-5659
e-mail: enter7740@14th-amendment.com

| | |
|---|---|
| Gordon Warren Epperly, <br> Sui Juris Petitioner, )<br>)<br>vs., )<br>)<br>State of Alaska, )<br>Respondent, )<br>)<br>vs., )<br>)<br>The United States of America, )<br>[UNITED STATES], )<br>Respondent. ) | District Court Case No. 1:15-cv-00002-SLG <br><br> **Petition For A Redress Of Grievance** <br> **Involving** <br> **Constitutional Controversies Of Conflicting Laws** <br><br> Interstate Commerce vs. Intrastate Commerce <br><br> U.S. Constitution, Article I, Section 8, Section 3 |

**COMES NOW GORDON WARREN EPPERY** as a citizen of the "*State of California*" and an inhabitant of the "*State of Alaska*" and as a natural born Citizen of the "*United States*" does hereby Petitions the above named U.S. District Court as one of "*WE THE PEOPLE*" for a U.S. Constitution, Article I, Bill of Rights "*Redress of Grievance*" to address a controversy of "*Laws*" that exist with the "*State of Alaska*" and with "*The United States of America*" ["*UNITED STATES*"] and proclaim the "*Rights*" of the "*Petitioner*" that exist under those Laws

## **INTRODUCTION**

1.      In our constitutional system, the federal government has preeminent authority to regulate interstate and foreign commerce, including commerce involving legal and illegal trafficking in drugs, such as marijuana.   This authority derives from the United States Constitution, "*Acts*" of U.S. Congress, including the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("*the CSA*"), /[1] and international Treaties and protocols to which the United States is a signatory.

2.      The nation's anti-drug laws reflect a well-established – and carefully considered and constructed – balance of National Law enforcement, foreign relations, and societal priorities. U.S. Congress has assigned to the United States Department of Justice ("*DOJ*") and the United States Drug Enforcement Administration ("*DEA*"), along with numerous other federal agencies, the task of enforcing and administering these anti-drug laws and Treaty obligations.  In administering these laws, the federal agencies balance the complex – and often competing – objectives that animate federal drug law and policy.    Although States may exercise their police power in a manner which has an effect on drug policy and trafficking, a State may *not* establish its own policy that is directly counter to federal policy against trafficking in controlled substances or establish a State-sanctioned system for possession, production, licensing, and distribution of drugs in a manner which interferes with the federal drug laws that prohibit possession, use, manufacture, cultivation, and/or distribution of certain drugs, including Marijuana. The U.S. Constitution and the federal anti-drug laws do not permit the development of a patchwork of State and local pro-drug policies and licensed-distribution schemes throughout the Country which conflict with Federal Laws.

3.      Despite the preeminent federal authority and responsibility over controlled substances, including Marijuana, Marijuana extracts, and Marijuana-infused products (*hereinafter collectively referred to as "Marijuana"*), the State of Alaska recently enacted and implemented

---

[1]/ Full text of the Federal Control Substance Act may be read from the Internet at: "http://tinyurl.com/3mau7kd".

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 2 of 48

the <u>Alaska Marijuana Ballot Initiative</u>, /[2] a sweeping set of provisions which are designed to permit: "*Personal use of marijuana*" and the "*Lawful operation of marijuana-related facilities*," and further to require the "*Regulation of marijuana*," provided that "*Such regulations shall not prohibit the operation of marijuana establishments, either expressly or through regulations that make their operation unreasonably impractical.*" *See* <u>Section 17.38.020</u>, <u>Section 17.38.070</u>, and <u>Section 17.38.090</u>.

4.    <u>Alaska Marijuana Ballot Initiative</u> pursues only one goal – legalization of marijuana – a goal which is diametrically opposed to the many objectives which <u>U.S. Congress</u> has established, and repeatedly reestablished, for the <u>United States</u>' anti-drug policy and practice for Marijuana as a controlled substance. If allowed to continue in effect, <u>Alaska Marijuana Ballot Initiative</u> legalization and commercialization scheme will be in conflict with the "*Racketeer Influenced and Corrupt Organizations Act*" ("*RICO*") of <u>The United States of America</u> /[3] and undermine the federal government's careful balance of anti-drug enforcement priorities and objectives. It will permit and enable at least hundreds – if not many thousands – of Marijuana cultivation, distribution, sales, and consumption operations.    It will permit and enable vast quantities of Marijuana with a commercial value of billions of dollars to be placed into commerce. It will directly conflict with express federal policy which *prohibits entirely* the possession and use for any purpose of certain controlled substances, including Marijuana products. /[4] Finally, it will interfere with vital foreign policy interests by disrupting the <u>United States</u>' relationship with other <u>Countries</u> which have entered

---

[2]/ Full text of the <u>Alaska Marijuana Ballot Initiative No. 2</u> (November 4, 2014 General Election) may be viewed on the Internet at: "http://tinyurl.com/mvpadyg".

[3]/ see <u>Title 18 U.S.C. 1961-1968</u>.

[4]/ e.g. <u>RICO</u> Statute <u>Title 18 U.S.C. 1961</u>: "(1) "racketeering activity" means –

   "(D) any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (*as defined in section 102 of the Controlled Substances Act*), punishable under any law of the United States, . . ." [*Emphasis added*].

Petition For A Redress Of Grievance
Case No. <u>To Be Assigned</u>

3

into "*Treaties*" and protocols with the United States to control trafficking in Marijuana and other controlled substances.

## JURISDICTION AND VENUE

5.　　This action arises under the Constitution for The United States of America, Article VI, Clause 2 and Article I, Section 8, and the Controlled Substances Act ("*84 Stat. 1242, 21 U.S.C. § 801, et seq.,*"). The above named U.S. District Court has jurisdiction over this "*controversy*" where the United States is a party pursuant to U.S. Constitution, Article III, Section 2, Clause 1 and has jurisdiction under 28 U.S.C. § 1331 and RICO Statute 18 U.S.C. § 1964(a). The U.S. Supreme Court has declared that U.S. District Courts have jurisdiction to entertain "*Petitions for Redress of Grievances*." /[5] The Petitioner seeks remedies under 28 U.S.C. §§ 1651, 2201, 2202 and RICO Statute 18 U.S.C. § 1962.

6.　　Venue lies in the District of Alaska pursuant to 28 U.S.C. § 1391(b) & (c) and 18 U.S.C. § 1965(a). The Respondent, State of Alaska, does business as a Corporation within the United States Judicial District of Alaska. The Petitioner, Gordon Warren Epperly, is a natural born human being who is domiciled within the United States Judicial District of Alaska.

---

[5]/ see U.S. Supreme Court case of "*BOROUGH OF DURYEA, PENNSYLVANIA, ET AL. v. GUARNIERI, No. 09–1476. Argued March 22, 2011—Decided June 20, 2011*" wherein the Court states: "This Court's precedents confirm that the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc.* v. *NLRB*, 467 U. S. 883, 896– 897 (1984); see also *BE&K Constr. Co.* v. *NLRB*, 536 U. S. 516, 525 (2002); *Bill Johnson's Restaurants, Inc.* v. *NLRB*, 461 U. S. 731, 741 (1983); *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U. S. 508, 513 (1972)."

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 4 of 48

## PARTIES

### Petitioner – Gordon Warren Epperly

7.      The Petitioner, Gordon Warren Epperly is a white Caucasian male who was born on the seventh day of the month of July in the year of our Lord, Jesus the Christ, Nineteen Hundred and Forty. His birth took place within the city of <u>Whittier</u> in the <u>State of California</u> and by such birth, he is a citizen of the <u>State</u> of his birth and is a natural born Citizen of the <u>United States</u>. The Petitioner, Gordon Warren Epperly, has been domiciled at the location of 10440 Glacier Highway within the <u>City and Borough of Juneau</u> (<u>*State of Alaska*</u>) since the year of our Lord, Jesus the Christ, Nineteen Hundred and Sixty-Five. Due to a conflict of "<u>*Laws*</u>" existing with the Respondent, <u>State of Alaska</u>, and Respondent, <u>United States,</u> to which "<u>*Laws*</u>" the Petitioner is bound to be in compliance with, the Petitioner has, and is now, suffering significant harm from those two sovereign powers.

### Respondent - State of Alaska

8.      The Respondent, <u>State of Alaska</u> is a government of limited "*Powers*" and it was incorporated on July 7, 1958 /[6] as a "*foreign corporation*" to the incorporated "<u>*UNITED STATES*</u>." /[7] The <u>U.S. Supreme Court</u> has defined "*Corporations*" to be "*Persons*" /[8] as that term is used within the "<u>*RICO Statutes*</u>" /[9] of <u>The United States of America</u>. Notwithstanding the <u>U.S. Congress'</u> use of

---

[6]/ <u>Alaska Statehood Act</u> - July 7, 1958, <u>72 Stat. 339</u> <u>Public Law 85-508</u>, at <u>Section One</u>.

[7]/ see <u>Volume 20: Corpus Juris Secundum, Pg. 1785</u>: (<u>NY re: Merriam 36 N.E. 505 1441 S.Ct. 1973, 41 L. Ed. 287</u>).

[8]/ see "<u>*Corporate Personhood*</u>" in the cases of <u>*Trustees of Dartmouth College v. Woodward*</u> – 17 U.S. 518 (1819) and <u>*Santa Clara County v. Southern Pacific Railroad*</u> – 118 U.S. 394 (1886)

[9]/ see <u>18 U.S. Code § 1961(3)</u>: " 'person' includes any individual or entity capable of holding a legal or beneficial interest in property; "

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 5 of 48

the phrase "*on equal footing with the other states*" in the Alaska Statehood Act, /[10] there is a presumption that the State of Alaska was brought into the Union on "*equal footing*" with the original thirteen States which States had entered into a "*Confederation*" on November 15, 1778 to create a body of government to represent them in the family of "*Nations*" known as The United States of America. /[11] Under the Articles of that Confederation, the States reserved unto themselves all the "*Powers*" of sovereignty /[12] which were not "*delegated*" to their newly created The United States of America. As those reserved "*Powers*" of the States of the Confederation were reaffirmed within Article X of the Bill of Rights to the Constitution for The United States of America and as every State that was brought into the Union thereafter were found to be on "*equal footing*" with the original thirteen States, the State of Alaska has authority to exercise the "*reserved*" sovereign "*Powers*" of the original thirteen States.

## Respondent - The United States of America [UNITED STATES]

9.      The government of The United States of America was created as a government of limited sovereign "*Powers*" exercising only those "*Powers*" as delegated to it by the original thirteen Confederated States of the year 1778. The government of The United States of America was brought into existence under the provisions of Article I of the November 25, 1778 Articles of Confederation and it **does not** exist on equal footing with other Nations whose powers are unlimited.

10.     The government of the "*United States*" was created as a Corporation in the year of 1787 with its "*Corporate Charter*" being a "*Constitution.*" This Corporation was created for the benefit of

---

[10]/ see Alaska Statehood Act - July 7, 1958, 72 Stat. 339 Public Law 85-508, at Section One.

[11]/ see the November 15, 1778 "*Articles of Confederation*" at "*Article I*".

[12]/ see the November 15, 1778 "*Articles of Confederation*" at "*Article II*".

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 6 of 48

the "*Roman Catholic Church*" as most of the members of the "*Convention*" were "*Jesuits*" /[13] or members of secret societies that were created by the "*Jesuits*" (*such as Jesuit Adam Weishaupt's* /[14] "*Blue Lodge Freemasons*" /[15]). This Corporation of the "*United States*" exist today as a "*defacto*" Corporation as the "*Convention*" of "*Delegates*" (*authorized by the* "*Commissioners*" *of the* "*Continental Congress*" *of Februarys 21, 1787*) had no authority to go beyond the expressed purpose of revising the "*Articles of the Confederation*" that were established on November 15, 1778. /[16]

For purposes of this "*Petition for Redress of Grievance*," the phrases of "*The United States of America*" and the "*United States*" shall be treated as one of the same.

## STANDING

11.    The Petitioner, Gordon Warren Epperly, is a survivor of "*Colon Cancer*" which has left the Petitioner with "*X-Ray Nerve Damage*" of the Spine.  The Petitioner was subject to three (3) major Surgeries, Chemo-Therapy, and X-Ray treatments to destroy the "*Cancerous Tumor.*"  As the beam of

---

[13]/  see website "*Wikipedia*" on "*Society of Jesus*" at: "http://tinyurl.com/lt62u8e".

[14]/  see "*Adam Weishaupt*" on the Internet at: "http://tinyurl.com/k7lg752".

[15]/  see "*Blue Lodge Freemasons*" on the Internet at: "http://tinyurl.com/oyp4j6v".

[16]/  The text in part of the "*Report of Proceedings in Congress*" of February 21, 1787 (*Journals of Continental Congress, vol. 38 [transcript], Library of Congress*) states:  "Whereas there is provision in the Articles of Confederation & perpetual Union for making alterations therein by the assent of a Congress of the United States and of the legislatures of the several States; And whereas experience hath evinced that there are defects in the present Confederation, as a mean to remedy which several of the States and particularly the State of New York by express instructions to their delegates in Congress have suggested a convention for the purpose expressed in the following resolution and such convention appearing to be the most probable mean of establishing in these states a firm national government.

"Resolved that in the opinion of Congress it is expedient that on the second Monday in May next a Convention of delegates who shall have been appointed by the several states be held at Philadelphia **for the sole and express purpose of revising the Articles of Confederation** and reporting to Congress and the several legislatures such alterations and provisions therein as shall when agreed to in Congress and confirmed by the states render the federal constitution adequate to the exigencies of Government & the preservation of the Union."  [*Emphasis added*].

the X-Ray was focused through the Petitioner's "*Spin*" from his backside to destroy the Tumor, the beam of the X-Ray damaged the Nerves in the Spine which according to several Physicians, cannot be treated by Surgery or by any other known means of treatment.

12.     The Petitioner, Gordon Warren Epperly has suffered pain which he has not been able to control by over-the-counter medications and which the discretionary usage of the prescription drug "*Oxycodone*" has limited affect.  The Petitioner has been advised that "*Marijuana*" may be helpful in relieving the pain.

13.     Although the respondent, the "*State of Alaska*" has made lawful the use of "*Marijuana*" for medical purposes, /[17] the Petitioner, Gordon Warren Epperly, has been unable to locate any Physician that is willing to supply a "*statement declaring that the Physician has personally examined the patient and that the examination took place in the context of a bona fide physician-patient relationship and setting out the date the examination occurred; stating that the patient has been diagnosed with a debilitating medical condition; and stating that the physician has considered other approved medications and treatments that might provide relief, that are reasonably available to the patient, and that can be tolerated by the patient, and that the physician has concluded that the patient might benefit from the medical use of marijuana; ... the name, address, and telephone number of the patient's physician ... .*" /[18] [*Emphasis added*]

14.     All the Physicians which the Petitioner, Gordon Warren Epperly have contacted expressed a fear that if they granted any "*Statement*" that "*Marijuana*" may be used for any purpose whatsoever, they may lose their "*Medical Licenses*" and be subject to stiff "*Penalties*" and "*Incarceration*" under

---

[17]/ see Alaska Statutes A.S. 17.37.010 – A.S. 17.37.080.

[18]/ see Alaska Statute A.S. 17.37.010  -  Registry of Patient and Listing of Caregivers.

the "*Federal Controlled Substance Law*." [19]    The Physicians looks upon any "*Statement*" given to any "*Agency*" of the "*State of Alaska*" that prescribes the use of "*Marijuana*" as medical treatment is the equivalent to the of issuance of "*Prescriptions*" [20] which is barred by the "*Federal Controlled Substance Law*." [21] As the "*Federal Controlled Substance Law*" declares that anyone that has any amount of "*Marijuana*" in their possession has committed a criminal act [22] and as any such "*Statement*" of "*Medical Marijuana*" use would be looked upon as an admission of "*aiding and abetting*" [23] the commission of crimes against the government of "*The United States of America*," said act may jeopardize a Physician of his/her privilege to practice medicine. [24]    The inability of the Petitioner to obtain a "*Medical Marijuana Card*" under the "*Laws*" of the "*State of Alaska*" is one cause that

---

[19]/  see 21 U.S.C. § 801-907.

[20]/  see website "http://tinyurl.com/d6y6lfr".

[21]/  see the "*Opinion*" of U.S. Court of Appeals, District of Columbia case of "*State of Oregon vs. John Ashcroft, et al., No. 02-35587*" on the Internet at: "http://tinyurl.com/k7lq9dm".

[22]/  see 21 U.S.C. § 841:  **"(a) Unlawful acts -** Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
  **"(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . .
     **"(b) Penalties -** Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
        **"(1)(D)** In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. ..."

[23]/  see 18 U.S.C. § 2: **"(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  **"(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[24]/  see "*U.S. Department of Justice*" website on "*Cases against Doctors*":  "http://tinyurl.com/o6p7t"

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 9 of 48

establishes "*Standing*" for the Petitioner to bring forth this "*Petition*" for a "*Redress of Grievance*" before the above named "*U.S. District Court*."

15.    The recent passage of the "*Alaska Marijuana Ballot Initiative*" /[25] provides that "*Marijuana*" may be used for "*Recreational*" purposes /[26] which makes "*Moot*" the "*Medical Marijuana Statutes*" of the "*State of Alaska*." As those "*Recreational Provisions*" of the "*Marijuana Ballot Initiative*" are in direct conflict with the "*Controlled Substance Law*" of "*The United States of America*," the Petitioner, Gordon Warren Epperly, is left in a state of "*Perplexity*" and "*Confusion*" to which there are no "*Administrative Remedies*" of resolution leaving the "*Petitioner*" with a true and actual damages of "*Standing*" to which the above named "*U.S. District Court*" may address.

## ADMINISTRATIVE REMEDIES

16.    There are no administrative remedies available to the Petitioner, Gordon Warren Epperly. Both the Respondents, the "*State of Alaska*" and "*The United States of America*" were notified of jurisdictional "*Controversies of Law*" involving "*Marijuana*" as a "*Drug*" moving in "*Commerce*." Neither of the Respondents have chosen to addressed the controversies.

17.    The Respondents were notified of the controversy of "*Laws*" that now exists with "The Controlled Substance Law" of The United States of America and with the State of Alaska's "Marijuana Laws"/[27] through written "*Testimony*" supplemented with "*Exhibits*" and several "*Letters*"

---

[25]/ "*Ballot Initiative No. 2*" of the Alaska State General Election of year 2014.

[26]/ see Alaska Statute "*A.S. 17.38.020*" - Personal use of marijuana.

[27]/ see "*Alaska Marijuana Ballot Intuitive No. 2*" (2014) creating Alaska Statutes A.S. 17.38.010 - A.S. 17.61.030 and with the existing Alaska Marijuana Statutes of A.S. 17.37.10 – A.S.17.37.30.

as addressed to the Legislature, the Governor, and to the Attorney General for the State of Alaska. Several Letters and Documents were also provided to U.S. Deputy Attorney Generals, the Executive Offices for United States Attorneys, the U.S Attorney for the District of Alaska, and to several "Members" of the U.S. Congress.

18.    Enclosed with this "*Petition for a Redress of Grievance*" is a listing of the Testimony, Documents, and Letters that were received by the Respondents. The enclosed "*listing*" and a PDF copy of this "*Petition for a Redress of Grievance*" with active "*Internet Links*" may be viewed from the Internet at:

<div align="center">

http://www.usa-the-republic.com/marijuana.html

</div>

<div align="center">

**STATEMENT OF CONTROVERSY
OF THE
CONFLICTS OF LAW**

</div>

19.    This controversy over the use of "*Marijuana*" began with The Coalition for Rescheduling Cannabis ("*www.drugscience.org*") filing of a "*Petition to Reschedule Cannabis*" (*Marijuana*) /[28] on October 9, 2002 with the U.S. Drug Enforcement Administration per 21 CFR 1308.44(b). This "*Petition to Reschedule Cannabis*" was "*denied*" by the U.S. Drug Enforcement Agency on June 21, 2011 and the ruling was published in the Federal Register, Friday July 8, 2011, Vol. 76, No. 131. /[29]    The Americans For Safe Access, the Coalition to Reschedule Cannabis, and the Patients Out of Time and several individuals petitioned the "*United States Court of Appeals for the District of Columbia Circuit*" for a "*Petition for Review of a Final Order of the United States Drug*

---

[28]/ see webpage: "http://tinyurl.com/mvmh9vz".

[29]/ Full text of the Ruling as published in the "*Federal Register*" may be viewed on the Internet at:
     "http://tinyurl.com/m6te6gp".

*Enforcement Administration*" where on January 22, 2013 the Court "*denied*" the <u>Petition</u> with a detailed <u>Ruling</u>. /[30]  The "<u>*Petition for Writ of Certiorari*</u>" /[31] was "*denied*" on Monday October 7, 2013 by the <u>U.S. Supreme Court</u>.

20.     Shortly after the <u>U.S. Drug Enforcement Agency</u> denied the Petition of "<u>*The Coalition for Rescheduling Cannabis*</u>" to reschedule "*Cannabis,*" U.S. Attorney General, "*Eric Holder*" took upon himself to use "<u>*The Theory of Prosecutorial Discretion*</u>" /[32] to circumvent the "<u>*Ruling*</u>" of the <u>U.S. Drug Enforcement Agency</u> in its classification of "*Marijuana*" as a <u>Schedule I</u> drug and circumventing the purpose and intent of the "<u>*Federal Controlled Substance Law*</u>" as proclaimed by the <u>U.S. Congress</u> within that <u>Law</u>. /[33]  This circumventing was accomplished by the delegation of express "*Powers*" of the <u>U.S. Congress</u> to regulate "*Interstate Commerce*" of <u>U.S. Constitution, Article I, Section 8, Clause 3</u> and the authority of the <u>President</u> of the <u>United States</u> to execute the "<u>*Law*</u>" of the "<u>*Federal Controlled Substance Law*</u>" to the several <u>States</u> of the <u>Union</u> through the issuances of <u>U.S. Justice Department</u> "<u>*Press Releases*</u>" /[34] and with "*Memos*" issued to <u>U.S. Attorneys</u> (*via U.S. Deputy Attorney General,* "<u>*David W. Ogden*</u>" /[35] *and U.S. Deputy Attorney General,* "<u>*James M. Cole*</u>" /[36]) instructing those <u>U.S. Attorneys</u> not to enforce the "*Marijuana*" <u>Schedule I</u>

---

[30]/ see "<u>*Court Order*</u>" on the Internet at: "http://tinyurl.com/p75pu8z".

[31]/ Full text of "<u>*Petition for Writ of Certiorari*</u>" may be viewed on the Internet at: "<u>http://tinyurl.com/nkyxvcy</u>".

[32]/ see "<u>*The Theory of Prosecutorial Discretion In Federal Law*</u>" may be viewed on the Internet at: "http://tinyurl.com/pqk5y45".

[33]/ see <u>21 U.S.C. § 801</u> – "<u>*Congressional findings and declarations: controlled substances*</u>".

[34]/ see "<u>*Press Release*</u>" may be viewed on the Internet at: "http://tinyurl.com/lr9oqml".

[35]/ see Ogden's "<u>*Memo*</u>" may be viewed on the Internet at: "http://tinyurl.com/o5flhme".

[36]/ see Cole's "<u>*Memo*</u>" may be viewed on the Internet at: "http://tinyurl.com/nayoqyy".

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 12 of 48

provision of the <u>Federal Controlled Substance Law</u> as that <u>Law</u> applies the <u>States</u> that have adopted "*Marijuana Medical Laws*." /[37]

21.     After U.S. Attorney General "*Eric Holder*" issued forth his "*Press Release*" and the "*Memos*" of his Deputy Attorney Generals, "*The Coalition for Rescheduling Cannabis*" went into full swing to sponsor "*Ballot Initiatives*" in several "*States*" to legalize "*Marijuana*" under the belief that the "*States*" have the "*Power*" to nullify "*Federal Laws*" which the "*People*" may not be in agreement with. The "*States*" of "*California*," "*Oregon*," "*Washington*," and "*Colorado*" are a few of the "*States*" that have adopted "*Ballot Initiatives*" establishing "*Marijuana Laws*" legalizing the use of "*Marijuana*."

22.     On December 22, 2014, the *States* of *Oklahoma* and *Nebraska* moved the "*U.S. Supreme Court*" for leave to file a "*Bill of Complaint*" against the "*State of Colorado*" for trespass/nuisance damages in that State's legalization and encouragement of the transport of "*Marijuana*" across *State* boundary lines into their *States*. It is said that the movement of "*Marijuana*" across *State* boundary lines interfered with and obstructed the *States* of *Oklahoma* and *Nebraska*'s rights of enforcement of their "*Marijuana Prohibition Drug Laws*" and with said "*trespass*" the State of Colorado violated several provisions of the "*Federal Controlled Substance Law*." /[38]

---

[37]/ The <u>U.S. Attorney General</u> exceeded his authority to override the findings of the "*<u>DEA</u>*" in allowing the <u>States</u> of the <u>Union</u> to legalize "*Marijuana*" for medical purposes. (*see <u>21 U.S.C. § 811(b)</u>*):

"The recommendations of the Secretary to the Attorney General [concerning which substances shall be covered by the CSA] **shall be binding on the Attorney General** as to such scientific and medical matters, and if the Secretary recommends that a drug or other substance not be controlled, the Attorney General shall not control the drug[.]" [*Emphasis added*].

[38]/ see <u>Nebraska & Oklahoma vs. Colorado</u>, U.S. Supreme Court Docket No. <u>22O144 ORG</u> on the Internet at: "http://tinyurl.com/n7yx45e" and the text of Plaintiff's "*<u>MOTION FOR LEAVE TO FILE COMPLAINT, COMPLAINT, AND BRIEF IN SUPPORT</u>*" may be viewed on the Internet at: "http://tinyurl.com/morvd5k". The "*<u>Brief in Opposition</u>*" of the <u>State of Colorado</u> may be viewed on the Internet at: "http://tinyurl.com/lvvp99o".

## BILLS AND RESOLUTIONS INTRODUCED
## INTO THE U.S. CONGRESS

23.      Several "*Bills*" and "*Resolutions*" have been introduced into the U.S. Congress to amend the "*Marijuana*" provisions of Schedule I of the "*Federal Controlled Substance Act*." /[39]  These proposed "*Bills*" and "*Resolutions*" serves as "*Notices*" upon the States that their "*Medical Marijuana Laws*" are unconstitutional, null and void.  Whether or not any of these "*Bills*" or "*Resolutions*" will ever move out of "*Congressional Committees*" remains to be seen.

## FEDERAL MARIJUANA COURT CASES

24.      Through the issuances of "*Press Releases*" of the U.S. Justice Department (*supra.*) and with "*Memos*" (*supra.*) instructing U.S. Attorneys to not enforce the Schedule I provision of the Federal Controlled Substance Law as that Law applies to "*Marijuana*" upon the States that have adopted "*Marijuana Medical Laws*" is a statement that the U.S. Attorney General has the authority to declare that there is a medical use for "*Marijuana*" notwithstanding the findings of the U.S. Drug Enforcement Agency.  What do the Federal Courts of The United States of America have to say about "*Marijuana*" being used for medical purposes?  Below are Federal Court Cases addressing the question:

---

[39]/ see HOUSE RESOLUTION 1013 (February 20, 2015), HOUSE RESOLUTION 1014 (February 20, 2015), SENATE BILL 683 (March 10, 2015), and HOUSE RESOLUTION 1538 (March 23, 2015).

**U.S. Supreme Court  (*May 14, 2001*)**
<u>**United States vs. Oakland Cannabis Buyers' Cooperative, et al.**</u>**, 532 U.S. 483 /[40]**

25.     This case of <u>United States vs. Oakland Cannabis Buyers' Cooperative, et al.</u>, addresses the uses of "*Marijuana*" for medical purposes within the <u>States</u>.  Here is what the <u>Court</u> had to say at <u>Footnote #7</u>:

> "Lest there be any confusion, we clarify that nothing in our analysis, or the statute, suggests that a distinction should be drawn between the prohibitions on manufacturing and distributing and the other prohibitions in the Controlled Substances Act.  Furthermore, the very point of our holding is that there is no medical necessity exception to the prohibitions at issue, even when the patient is "seriously ill" and lacks alternative avenues for relief.   Indeed, it is the Cooperative's argument that its patients are "seriously ill," see, *e.g.*, Brief for Respondents 11, 13, 17, and lacking "alternatives," see, *e.g.*, *id.*, at 13.  We reject the argument that these factors warrant a medical necessity exception.  If we did not, we would be affirming instead of reversing the Court of Appeals.

> Finally, we share JUSTICE STEVENS' concern for "showing respect for the sovereign States that comprise our Federal Union." *Post*, at 3 (opinion concurring in judgment).  However, we are "construing an Act of Congress, not drafting it." *United States* v. *Bailey*, 444 U. S. 394, 415, n. 11 (1980).  Because federal courts interpret, rather than author, the federal criminal code, we are not at liberty to rewrite it.  Nor are we passing today on a constitutional question, such as whether the Controlled Substances Act exceeds Congress' power under the Commerce Clause."

**U.S. Supreme Court  (*June 6, 2005*)**
<u>**Gonzales vs. Raich**</u>**. 545 U.S. 1 /[41]**

26.     This case of <u>Gonzales vs. Raich</u> addresses the authority of the <u>U.S. Congress</u> to regulate the "*Intrastate*" commerce of the <u>States</u> in and through the "*Interstate*" Commerce Clause of <u>U.S. Constitution, Article I, Section 8, Clause 3</u> giving the <u>U.S. Congress</u> the authority to

---

[40]/ The text of <u>*United States vs. Oakland Cannabis Buyers' Cooperative, et al.*</u>, may be viewed from the Internet at: "http://tinyurl.com/qbwy4jh".

[41]/ The text of <u>*Gonzales vs. Raich*</u> may be viewed from the Internet at: "http://tinyurl.com/kbjqaxx".

Petition For A Redress Of Grievance
Case No.  To Be Assigned

15

regulate "*Marijuana*" within the States. This case of Gonzales vs. Raich also addresses the authority of the government of The United States of America to ban the use of "*Marijuana*" for "*medical purposes*" including home consumption which nullifies the private home use of "*Marijuana*" as authorized by the Alaska State Supreme Court in the case of Ravin v. State, 537 P.2d 494: /[42]

> "Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce is firmly established. See, *e.g., Perez v. United States, 402 U. S. 146, 151*. /[43] If Congress decides that the " *'total incidence'* " of a practice poses a threat to a national market, it may regulate the entire class. See, *e.g., id., at 154-155*. Of particular relevance here is *Wickard v Filburn, 317 U.S. 111, 127-128*, /[44] where, in rejecting the appellee farmer's contention that Congress' admitted power to regulate the production of wheat for commerce did not authorize federal regulation of wheat production intended wholly for the appellee's own consumption, the Court established that Congress can regulate purely **intrastate** activity that is not itself "*commercial*," *i.e.,* not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity. The similarities between this case and *Wickard* are striking. In both cases, the regulation is squarely within Congress' commerce power because production of the commodity meant for **home consumption**, be it wheat or **marijuana**, has a substantial effect on supply and demand in the national market for that commodity. In assessing the scope of Congress' Commerce Clause authority, the Court need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a "*rational basis*" exists for so concluding. *E.g., Lopez, 514 U.S., at 557*. /[45] Given the enforcement difficulties that attend distinguishing between **marijuana** cultivated locally and **marijuana** grown elsewhere, *21 U. S. C. § 801(5)*, and concerns about diversion into illicit channels, the Court has no difficulty concluding that Congress had a rational basis for believing that failure to regulate the **intrastate** manufacture and possession of **marijuana** would leave a gaping hole in the *CSA*. Pp. 12-20." [*Emphasis added*].

---

[42]/ The text of *Ravin v. State* may be viewed from the Internet at: "http://tinyurl.com/p8wku5u".

[43]/ The text of *Perez v. United States* may be viewed from the Internet at: "http://tinyurl.com/qddd7mo".

[44]/ The text of *Wickard v Filburn* may be viewed from the Internet at: "http://tinyurl.com/nfxczvj".

[45]/ The text of *United States vs. Lopez* may be viewed from the Internet at: "http://tinyurl.com/n3kl775".

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 16 of 48

The <u>U.S. Supreme Court</u> continues:

> "In enacting the <u>*CSA*</u>, Congress classified marijuana as a **Schedule I** drug.
> **21 U. S. C. § 812(c)**. This preliminary classification was based, in part, on
> the recommendation of the Assistant Secretary of HEW "*that marihuana be retained
> within schedule I at least until the completion of certain studies now underway*."
> **Schedule I** drugs are categorized as such because of their high potential for abuse, **lack of
> any accepted medical use**, and **absence of any accepted safety for use in medically
> supervised treatment. § 812(b)(1)**. These three factors, in varying gradations, are also
> used to categorize drugs in the other four schedules. For example, **Schedule II** substances
> also have a high potential for abuse which may lead to severe psychological or physical
> dependence, but unlike **Schedule I** drugs, they have a currently accepted medical use.
> **§ 812(b)(2)**. By classifying marijuana as a **Schedule I** drug, as opposed to listing it on
> a lesser schedule, **the manufacture, distribution, or possession of marijuana became
> a criminal offense**, with the **sole exception** being use of the drug as part of
> a Food and Drug Administration **pre-approved research study. §§ 823(f)**,
> **841(a)(1)**, **844(a)**; see also <u>*United States v. Oakland Cannabis Buyers' Cooperative,
> 532 U.S. 483, 490*</u> (2001)." [*Emphasis added*].

<div align="right">

<u>GONZALES, ATTORNEY GENERAL, *et al. v.* RAICH *et al.*,</u>
certiorari to the United States Court of Appeals for the Ninth Circuit,
No. <u>03-1454</u>. Argued November 29, 2004--Decided June 6, 2005.

</div>

## U.S. Court of Appeals, Ninth Circuit *(May 6, 2012)*
## <u>Marla James, et al., vs. City of Costa Mesa</u>, No. 10-55769 /[46]

27. This case of <u>Marla James, et al., vs. City of Costa Mesa</u> addresses
the "<u>*American Disabilities Act*</u>" (<u>*ADA*</u>) and the use of "*Medical Marijuana*" under that "<u>*Act*</u>" within
the <u>States</u>. Here is what the <u>Court</u> had to say:

> "We recognize that the plaintiffs are gravely ill, and that their request for ADA relief
> implicates not only their right to live comfortably, but also their basic human dignity.
> We also acknowledge that California has embraced marijuana as an effective treatment
> for individuals like the plaintiffs who face debilitating pain. Congress has made clear,
> however, that the ADA defines "illegal drug use" by reference to federal, rather than
> state law, and federal law does not authorize the plaintiffs' medical marijuana use.

---

[46]/ The text of *Marla James, et al., vs. City of Costa Mesa* may be viewed from the Internet at: "http://tinyurl.com/pjdkjh5".

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 17 of 48

We therefore necessarily conclude that the plaintiffs' medical marijuana use is not protected by the ADA."

## U.S. Court of Appeals, District of Columbia Circuit *(January 22, 2013)*
## <u>Americans For Safe Access, et al., vs. Drug Enforcement Administration</u>, No. 11-1265 /[47]

28.    The case of <u>Americans For Safe Access, et al., vs. Drug Enforcement Administration</u> was brought into the <u>Court</u> on a judicial review of the <u>U.S. Drug Enforcement Agency</u> ruling that "*denied*" the <u>American For Safe Access</u>' "*<u>Petition</u>*" to reclassify the "*<u>Federal Control Substance Law, Schedule I</u>*" classification of "*Marijuana*" to a classification that would allow "*Marijuana*" to be used for medical purposes. Here is what the <u>Court</u> had to say:

> "The DEA's construction of its regulation is eminently reasonable. Therefore, we are obliged to defer to the agency's interpretation of "*adequate and well-controlled studies.*" *See <u>Thomas Jefferson Univ., 512 U.S. at 512</u>* /[48] (*deferring to "an agency's interpretation of its own regulations"*). Judged against the DEA's standard, we find nothing in the record that could move us to conclude that the agency failed to prove by substantial evidence that such studies confirming marijuana's medical efficacy do not exist."

The "*<u>Petition</u>*" for a <u>U.S. Supreme Court</u> "*<u>Writ of Certiorari</u>*" was "*Denied*" on November 18, 2013. /[49]

---

[47]/ The text of *<u>Americans For Safe Access, et al., vs. Drug Enforcement Administration</u>* may be viewed from the Internet at: "http://tinyurl.com/o9cd4wo".

[48]/ The text of *<u>Thomas Jefferson University</u>* may be viewed from the Internet at: "http://tinyurl.com/npe4vj2".

[49]/ "*<u>Writ of Certiorari</u>*" was "*Denied.*" see <u>PDF File</u> from Internet Link: "http://tinyurl.com/npt5whj".

**U.S. Supreme Court – (*June 25, 2012*).**
**ARIZONA et al., vs. UNITED STATES, No. 11-182** [50]

29.   The case of   Arizona et al., vs. United States addresses an Arizona statute known as S.B. 1070 which was enacted in 2010 to address pressing issues related to the large number of unlawful aliens in the State.   The United States sought to enjoin the law as preempted.:

> "The Supremacy Clause gives Congress the power to preempt state law.   A statute may contain an express preemption provision, see, *e.g., Chamber of Commerce of United States of America* v. *Whiting*, 563 U.S. ___, ___, [51] but state law must also give way to federal law in at least two other circumstances.   First, States are precluded from regulating conduct in a field that Congress has determined must be regulated by its exclusive governance.   See *Gade* v. *National Solid Wastes Management Assn.,* 505 U.S. 88, 115. [52]   Intent can be inferred from a framework of regulation "so pervasive . . . that Congress left no room for the States to supplement it" or where a "federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230. [53]   Second, state laws are preempted when they conflict with federal law, including when they stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz*, 312 U.S. 52, 67. [54] Pp. 7–8.

So it is with the "*Marijuana*" legalization laws of the States.

---

[50]/ The text of *Arizona et al., vs. United States* may be viewed from the Internet at: "http://tinyurl.com/kyal6df".

[51]/ The text of *Chamber of Commerce of United States of America* v. *Whiting* may be viewed from the Internet at: "http://tinyurl.com/lpyxqa3".

[52]/ The text of *Gade* v. *National Solid Wastes Management Assn.,* may be viewed from the Internet at: "http://tinyurl.com/qgb4vq4".

[53]/ The text of *Rice v. Santa Fe Elevator Corp.*, may be viewed from the Internet at: "http://tinyurl.com/kph9cgj".

[54]/ The text of *Hines* v. *Davidowitz* may be viewed from the Internet at: "http://tinyurl.com/prqn9v9".

## THE CONTROVERSEY OF LAWS

### Federal Authority and Law Governing Controlled Substances and Other Drugs

30.     The Supremacy Clause of the Constitution mandates that:

> "This Constitution, and the Laws of the United States which shall
> be made in Pursuance thereof; and all Treaties made, or shall be made,
> under the authority of the United States, shall be the supreme Law of
> the Land; and the Judges in every State shall be bound thereby,
> any Thing in the Constitution or Laws of any State to the Contrary
> notwithstanding."

<div align="right">U.S. Const. art. VI, cl. 2.</div>

31.     The U.S. Constitution affords the federal government the power to "*regulate Commerce
with foreign Nations, and among the several States, and with the Indian Tribes*."
U.S. Const. Art. I, § 8, cl. 3.  The U.S. Constitution further affords the federal government the power
"[t]*o make all Laws which shall be necessary and proper for carrying into Execution*" its authority
to "*regulate Commerce*."  U.S. Const. Art. I, § 8, cl. 18.    As such, the federal government has
broad authority to regulate the status of drugs within the boundaries of the United States.

32.     The U.S. Congress has exercised its authority to do so.  The CSA, enacted in 1970 as part
of the Comprehensive Drug Abuse Prevention and Control Act, 84 Stat. 1242-1284, is a lengthy and
detailed statute creating a comprehensive framework for regulating the production, distribution,
and possession of five classes of "*controlled substances*."   The CSA places various plants, drugs,
and chemicals (*such as narcotics, stimulants, depressants, hallucinogens, and anabolic steroids*) into
one of these five classes, called "*Schedules*," based on the substance's medical use, potential for abuse,
and safety or dependence liability.  21 U.S.C. §§ 811-812.

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 20 of 48

33.     Most of those substances – those listed in <u>Schedules II</u> through <u>V</u> – "*have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.*"   21 U.S.C. § 801(1).   The regulatory scheme is designed to foster the beneficial use of those medications, to prevent their misuse, and – by Congressional mandate – *to prohibit entirely* the possession or use of substances listed in <u>Schedule I</u>, except as a part of a strictly controlled research project.

34.     The <u>CSA</u> establishes a comprehensive regime to combat the international and  national traffic in illicit drugs.   The main objectives of the <u>CSA</u> are to prevent drug abuse and its debilitating impacts on society and to control the legitimate and illegitimate traffic in controlled substances. In particular, <u>U.S. Congress</u> made the following findings:

> "(1)  Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.
>
> (2)  The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.
>
> (3)  A major portion of the traffic in controlled substances flows through interstate and foreign commerce.   Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because –
>
>> (A) after manufacture, many controlled substances are transported in interstate commerce,
>>
>> (B)  controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and
>>
>> (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.
>
> (4)  Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."

<p align="right">21 U.S.C. § 801(1) - (6).</p>

35.    U.S. Congress stated its particular concern with the need to prevent the diversion of drugs from legitimate to illicit channels.    H.R. Rep. No. 91-1444, pt. 2, at 22 (1970) *reprinted in* 1970 U.S.C.C.A.N. 4566, 4567.

36.    To effectuate these goals, U.S. Congress devised a closed regulatory system making it unlawful to manufacture, distribute, possess with intent to distribute, possess without a valid prescription, or dispense any controlled substance except in a manner authorized by the CSA. 21 U.S.C. §§ 841(a)(1), 844(a).  The CSA groups controlled substances into five Schedules based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body.  *Id.* §§ 811, 812.  Each Schedule is associated with a distinct set of controls regarding the manufacture, distribution, and use of the substances listed therein.  *Id.* §§ 821-830.  The CSA and its implementing regulations set forth strict requirements regarding registration, labeling and packaging, production quotas, drug security, and recordkeeping.  *Id.;* 21 C.F.R. § 1301 *et seq.* (2013).

37.    For example, the CSA requires persons who handle controlled substances or listed chemicals (*such as drug manufacturers, wholesale distributors, doctors, hospitals, pharmacies, and scientific researchers*) to register with the DEA, which administers and enforces the CSA within the DOJ.  *See* 21 U.S.C. § 823.  Registrants must maintain detailed records of their respective controlled substance inventories, as well as establish adequate security controls to minimize theft and diversion.

*See* 21 C.F.R. § 1304.11(a) ("*Each inventory shall contain a complete and accurate record of all controlled substances on hand...*"). In addition, "[a]*ll applicants and registrants shall provide effective controls to guard against theft and diversion of controlled substances....*" *See* 21 C.F.R. § 1301.74(a). According to the DEA, more than 770,000 manufacturers, distributors, pharmacies, and other handlers of controlled substances currently are registered with the federal agency.

38.    In enacting the CSA, the *U.S. Congress* classified Marijuana as a Schedule I drug. 21 U.S.C. § 812(c). Marijuana is therefore subject to the *most* severe restrictions contained within the CSA. Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safe use in medically supervised treatment. 21 U.S.C. § 812(b)(1).

39.    While the statute provided for the periodic updating of the five Schedules, the U.S. Congress itself made the initial classifications. It identified 42 opiates, 22 opium derivatives, and 17 hallucinogenic substances as Schedule I drugs. 84 Stat. 1248. Congressional intent is clear: by classifying Marijuana as a Schedule I drug, as opposed to listing it on a lesser Schedule, the U.S. Congress *mandated* that the manufacture, distribution, or possession of Marijuana be a criminal offense, with the sole exception being the use of the drug as part of a United States Food and Drug Administration pre-approved research study. 21 U.S.C. §§ 823(f), 841(a)(1), 844(a).

40.    The Schedule I classification of Marijuana was merely one of many essential parts of a larger regulation of economic activity, in which the regulatory scheme would be undercut unless the *intrastate* activity identified by the U.S. Congress were regulated as well as the interstate and international activity. The U.S. Congress specifically included Marijuana intended for intrastate consumption in the CSA because it recognized the likelihood that high demand in the interstate market would significantly attract such Marijuana. *See, e.g.*, 21 U.S.C. § 801(3)-(6). The diversion of Marijuana from the State of Alaska contradicts the clear Congressional intent and frustrates the federal interest in eliminating commercial transactions in the interstate controlled-substances market in their entirety, as well as the Treaty and Convention obligations of the United States to effectively control

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 23 of 48

international and domestic trafficking in controlled substances. *See, e.g.*, 21 U.S.C. § 801(3)-(7). The regulation of such transactions involving Marijuana as a Schedule I Controlled Substance is squarely within the commerce power of the U.S. Congress because production of, and trafficking in, the commodity – even if meant only for intrastate consumption – has a substantial effect on supply and demand in the national market for that commodity.

41.     Although various factors contribute to the ultimate sentence received, the simple possession of Marijuana generally constitutes a misdemeanor offense, with a maximum penalty of up to one (1) year imprisonment and a minimum fine of $1,000.     21 U.S.C. § 844(a). Conversely, the cultivation, manufacture, or distribution of Marijuana, or the possession of Marijuana with the intent to distribute, is subject to significantly more severe penalties.   Such conduct generally constitutes a felony with a maximum penalty of up to five-years imprisonment and a fine of up to $250,000. 21 U.S.C. § 841(b).

42.     It also is unlawful to conspire to violate the CSA, 21 U.S.C. § 846; to knowingly open, lease, rent, use, or maintain property for the purpose of manufacturing, storing, or distributing controlled substances, 21 U.S.C. § 856(a)(1); and to manage or control a building, room, or enclosure and knowingly make it available for the purpose of manufacturing, storing, distributing, or using controlled substances. 21 U.S.C. § 856(a)(2). Federal law further criminalizes aiding and abetting another in committing a federal crime, conspiring to commit a federal crime, assisting in the commission of a federal crime, concealing knowledge of a felony from the United States, and laundering the proceeds of CSA offenses. 18 U.S.C. §§ 2-4, 371.

43.     By enacting the CSA, the U.S. Congress did not intend to preempt the entire field of drug enforcement.   Under 21 U.S.C. § 903, the CSA shall not "*be construed*" to "*occupy the field*" in which the CSA operates "*to the exclusion of any [s]tate law on the same subject matter which would otherwise be within*" the state's authority.   Rather, Section 903 provides that state laws are preempted only when "*a positive conflict*" exists between a provision of the CSA and a state law "*so that the two cannot consistently stand together.*" *Id.*

44.    Given the directly contradictory provisions in the Alaska Marijuana Ballot Initiative, Alaska Statute Title 17, Chapter 37, and the CSA, a "*positive conflict*" clearly exists and "*they cannot consistently stand together*." The enforcement of the CSA violates State of Alaska law, and conversely adherence to State of Alaska law violates the CSA.

45.    A variety of provisions of the CSA contemplate that the DOJ and DEA will work cooperatively with states and localities "*concerning traffic in controlled substances and in suppressing the abuse of controlled substances*"; and that the federal government and the states will enter into "*contractual agreements... for cooperative enforcement*" of the CSA.    21 U.S.C. § 873(a). These provisions of the CSA establish support and cooperation in enforcing the CSA, including grants to state and local governments, 21 U.S.C. § 873(d); authorization to deputize state and local law enforcement officers to support enforcement of the CSA, 21 U.S.C. § 878; and the transfer of property civilly or criminally forfeited for violations of the CSA to any state or local law enforcement agencies that participated in the seizure, in part "*to encourage further cooperation between the recipient state or local agency and Federal law enforcement agencies*." 21 U.S.C. § 881(e).

46.    Furthermore, the CSA provides for plenary seizure and forfeiture as "*contraband*" of "[a]*ll controlled substances in schedule I or II that are possessed, transferred, sold, or offered for sale in violation of the provisions of [the CSA]*." 21 U.S.C. § 881(f). The CSA further provides that "[a]*ll species of plants from which controlled substances in schedules I and II may be derived which have been planted or cultivated in violation of [the CSA]... may be seized and summarily forfeited to the United States*." 21 U.S.C. § 881(g). By virtue of these provisions, state and local law enforcement officers have regularly exercised the power to seize Marijuana, Marijuana Products, and Marijuana Plants found in their jurisdictions for summary forfeiture to the United States by delivery to "*Special Agents*" of the DEA or the FBI.

47.    The opportunity that federal law provides for participation by State and local officials does not mean that States are permitted to enact their own controlled-substances policies and regulatory

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 25 of 48

regimes that conflict with the national controlled-substances policy. The formulation of policy for controlling and regulating these controlled substances *and* for balancing of controlled-substances regulation, possession, and distribution priorities is a matter exclusively reserved for the federal government. Such regulations do not fall within the State's traditional police powers and remain the exclusive province of the federal government.

48.     State of Alaska's Marijuana Ballot Initiative obstructs a number of the specific goals which the U.S. Congress sought to achieve with the CSA. By permitting, and in some cases requiring, the cultivation, manufacture, packaging-for-distribution, and distribution of Marijuana, the Alaska Marijuana Ballot Initiative undercuts Congressional edicts, including the Congressional finding that such distribution has a "*substantial and detrimental effect on the health and general welfare of the American people*," 21 U.S.C. § 801(2); that although local drug trafficking may itself not be "*an integral part*" of the interstate flow of drugs, it nonetheless has "*a substantial and direct effect upon interstate commerce*," *id.* § 801(3); and that "[f]*ederal control of the intrastate incidents of drug trafficking is essential to the effective control of the interstate incidents of drug trafficking.*" *Id.* § 801(6) [*Emphasis added*].

49.     State and local officials who are now required by Alaska Marijuana Ballot Initiative to support the establishment and maintenance of a commercialized Marijuana industry in the State of Alaska are violating the CSA.     The scheme enacted by the State of Alaska for retail Marijuana is contrary and obstructive to the CSA and U.S. Treaty obligations.  The retail Marijuana laws embed state and local government actors with private actors in a state-sanctioned and state-supervised industry which is intended to, and does, cultivate, package, and distribute Marijuana for commercial and private possession and use in violation of the CSA (*and therefore in direct contravention of clearly stated Congressional intent*).     It does so without the required oversight and control by the DOJ (*and DEA*) that is *required* by the CSA – and regulations adopted pursuant to the CSA – for the manufacture, distribution, labeling, monitoring, and use of drugs and drug-infused products which are listed on lesser Schedules.  *See* 21 C.F.R. § 130 *et seq.*

**Treaties and Conventions Governing Controlled Substances and Other Drugs**

50. Through its exclusive Constitutional power to conduct foreign policy for the nation, the United States is a party to international Treaties and Conventions under which it has agreed to control trafficking in drugs and psychotropic substances, such as Marijuana, throughout the United States, including the State of Alaska. The three principal Treaties or Conventions on control of drugs to which the United States is a party and pursuant to which it has agreed to take steps to control drug trafficking, including trafficking in Marijuana, are: (1) the Single Convention on Narcotic Drugs of 1961, as amended by the 1972 Protocol ("*Single Convention*"); (2) the Convention on Psychotropic Substances of 1971 ("*1971 Convention*"); and (3) the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances of 1988 ("*1988 Convention*").

***Single Convention***

51. The United States became a party to the Single Convention on November 1, 1972. /[55] The Single Convention specifically includes "cannabis" (*Marijuana*). The parties to the Single Convention, including the United States, resolved to protect against drug addiction and that the parties "[s]*hould do everything in their power to combat the spread of the illicit use of drugs.*" Single Convention at Resolution III. The Single Convention also requires that the parties to it be "[c]*onscious of their duty to prevent and combat the evil*" of drug addiction, "[d]*esiring to conclude a generally acceptable international convention replacing existing treaties on narcotic drugs, limiting such drugs to medical and scientific use, and providing for continuous international co-operation and control for the achievement of such aims and objectives.*" *Id.* at Preamble. The Single Convention also established an International Narcotics Control Board, which may take

[55]/ Full text of the "Single Convention" may be viewed as an e-book which may be downloaded from the Internet at: "http://tinyurl.com/pha8ul7".

certain steps to ensure execution of the provisions of the <u>Convention</u> by its signatories. *See* <u>Single Convention, Article 14.</u>

52.     Under the <u>Single Convention,</u> a party shall adopt any special measures of control which the party determines to be necessary in regard to the particularly dangerous properties of a covered drug; and if in its opinion the prevailing conditions in its country render it the most appropriate means of protecting public health and welfare, a "*Party shall… prohibit the production, manufacture, export and import of, trade in, possession or use of any such drug except for amounts which may be necessary for medical and scientific research only.*"     *See* <u>Single Convention, Article 2, 5(a)</u> and <u>(b).</u> The <u>United States</u> adopted the <u>Controlled Substances Act</u> in part because the <u>United States</u> had become a party to the <u>Single Convention</u> and was therefore committed to its design to establish effective control over international and domestic traffic in controlled substances. <u>21 U.S.C. § 801(7).</u>

53.     Other provisions of the <u>Single Convention</u> which directly correlate with measures which the <u>United States</u> has undertaken in part because of its status as a party are:

> **Article 4, "General Obligations"** – "The Parties shall take such legislative and administrative measures as may be necessary: (a) To give effect to and carry out the provisions of this Convention within their own territories; (b) To co-operate with other States in the execution of the provisions of this Convention; and (c) Subject to the provisions of this Convention, to limit exclusively to medical and scientific purposes the production, manufacture, export, import, distribution of, trade in, use and possession of drugs."

> **Article 28, "Control of Cannabis"** – "If a Party permits the cultivation of the cannabis plant for the production of cannabis or cannabis resin, it shall" [*establish a government agency to maintain controls relating to licensure and designation of areas where cultivation can occur*]… "Parties shall adopt measures as may be necessary to prevent the misuse of, and illicit traffic in, the leaves of the cannabis plant."

> **Article 33, "Possession of Drugs"** – "Parties shall not permit the possession of drugs except under legal authority."

**Article 36, "Penal Provisions"** – "Subject to its constitutional limitations, each Party shall adopt such measures as will ensure that cultivation, production, manufacture, extraction, preparation, possession, offering, offering for sale, distribution, purchase, sale, delivery on any terms whatsoever, brokerage, dispatch, dispatch in transit, transport, importation and exportation of drugs contrary to the provisions of this Convention, and any other action which in the opinion of such Party may be contrary to the provisions of this Convention, shall be punishable offences when committed intentionally, and that serious offences shall be liable to adequate punishment particularly by imprisonment or other penalties of deprivation of liberty."

54.     With respect to Single Convention Article 28 in particular, the United States has *not* adopted any law permitting the cultivation of the cannabis plant for the production of cannabis or cannabis resin, and it has *not* established an Agency to maintain controls relating to licensure and designation of areas where cultivation can occur. Instead, by virtue of the CSA, the United States has met its Treaty obligations under the Convention by prohibiting the possession of Schedule I drugs, including *"Marijuana"* (*Article 33*), and has adopted measures to *"ensure that cultivation, production, manufacture, extraction, preparation, possession, offering, offering for sale, distribution, purchase, sale, delivery on any terms whatsoever, brokerage, dispatch, dispatch in transit, transport, importation and exportation of drugs contrary to the provisions of this Convention ... shall be punishable offences when committed intentionally."* (*Article 36*).

### *1971 Convention*

55. The United States became a party to the 1971 Convention /[56] on April 16, 1980. The 1971 Convention does not specifically define "*Cannabis*" or "*Marijuana*," but includes it by reference to "*psychotropic substance*," a classification which includes tetrahydrocannabinol ("*THC*"), the psychoactive ingredient in "*Marijuana*," as a Schedule I substance. *See* 1971 Convention, Article I(e) and Schedule I. Per Resolution I of the 1971 Convention, States are invited, "*to the extent they are able to do so, to apply provisionally the measures of control provided in the (1971 Convention) pending its entry into force for each of them.*" *See* 1971 Convention, Resolution I. /[57]

56. The 1971 Convention seeks to prevent and combat abuse of certain psychotropic substances, including THC, and the illicit traffic of them. *Id.* at Preamble. In amending the CSA in connection with the United States becoming a party to the 1971 Convention, the U.S. Congress declared that it "*has long recognized the danger involved in the manufacture, distribution, and use of certain psychotropic substances for non-scientific and non-medical purposes, and has provided strong and effective legislation to control illicit trafficking and to regulate legitimate uses of psychotropic substances in this country. Abuse of psychotropic substances has become a phenomenon common to many countries, however, and is not confined to national borders. It is*

---

[56]/ Full text of the "1971 Convention" may be viewed from an Internet PDF File download at: "http://tinyurl.com/okpewpa".

[57]/ Full text of the "1971 Convention, Resolution I" may be viewed from the Internet at: "http://tinyurl.com/oz39ckx".

therefore essential that the United States cooperate with other nations in establishing effective controls over international traffic in such substances." 21 U.S.C. § 801a.

57.     The U.S. Congress further declared that the 1971 Convention was not self-executing, that "*the obligations of the United States thereunder may only be performed pursuant to appropriate legislation*," and that it is the intent of the U.S. Congress that the Controlled Substances Act, as amended, "*will enable the United States to meet its obligations under the [1971] Convention*." *Id*. Those obligations include "*establish*[ing] *effective control over the manufacture, distribution, transfer, and use*" of psychotropic substances. *Id*.

58.     Under the 1971 Convention there are "*Special Provisions Regarding Substances in Schedule I*" which provide that the parties to the Convention "*shall*," among other things: "*prohibit all use except for scientific and very limited medical purposes*"; "*require that manufacture, trade distribution and possession be under a special license*"; and prohibit general, commercial import and export of such Schedule I substances.     *See* 1971 Convention, Article 7(a) through (f). [*Emphasis added*].

### *1988 Convention*

59.     The United States became a party to the 1988 Convention on February 20, 1990. /[58] The purpose of the 1988 Convention is to promote cooperation among Countries to address more effectively the various aspects of illicit traffic of narcotic drugs and psychotropic substances having

---

[58]/ Full text of the "1988 Convention" from an Internet PDF File download at: "http://tinyurl.com/ove4k5k".

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 31 of 48

international dimension, including "*Cannabis*." The 1988 Convention mandates that Countries which are signatory to the Convention "*shall take necessary measures, including legislative and administrative measures,*" in carrying out the party's obligations under the 1988 Convention. *See* 1988 Convention, Article 2, § 1.

60. Other provisions of the 1988 Convention directly correlate with measures that the United States has undertaken – or is obligated by this Treaty to take with respect to controlled substances such as Marijuana because of its status as a party, including:

**Article 3**, titled "*Offences and Sanctions*" which provides that:

(i) "Each Party shall adopt measures as may be necessary to establish as criminal offences under its domestic law, when committed intentionally:" the "production, manufacture, extraction, preparation, offering, offering for sale, distribution, sale, delivery on any terms whatsoever, brokerage, dispatch, dispatch in transit, transport, importation or exportation of any narcotic drug or any psychotropic substance contrary to the provisions" of the previous Conventions; the cultivation of cannabis plants; the possession or purchase of any narcotic drug or psychotropic substance for the purpose of any of the activities above; and the organization, management, or financing of any of the offences enumerated above;

(ii) "Subject to its constitutional principles and the basic concepts of its legal system, each Party shall adopt such measures as may be necessary to establish as a criminal offence under its domestic law, when committed intentionally, the possession, purchase or cultivation of narcotic drugs or psychotropic substances for personal consumption contrary to the provisions of the [*Conventions*]"; and

(iii) "The "Parties shall endeavor to ensure that any discretionary legal powers under their domestic law relating to the prosecution of persons for offences established in accordance with this article are exercised to maximize

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 32 of 48

the effectiveness of law enforcement measures in respect of those offences and with due regard to the need to deter the commission of such offences;"

**Article 14**, titled "*Measures to Eradicate Illicit Cultivation of Narcotic Plants and to Eliminate Illicit Demand for Narcotic Drugs and Psychotropic Substances*" which provides that "*Each Party shall take appropriate measures to prevent illicit cultivation of and to eradicate cannabis cultivated illicitly in its territory.*"

### *Bilateral Initiatives and Trade Agreements*

61.     In addition, the United States is signatory to numerous bilateral initiatives, such as the Merida Initiative, and trade agreements which provide for mutual commitment, cooperation, and support on the interdiction of Schedule I drugs, including "*Marijuana*," internally in the United States and in its trading partner Countries, especially in North, Central, and South America, whose purposes are directly contradicted by Alaska Ballot Initiative in regard to the domestic cultivation, manufacture, distribution, and/or possession of "*Marijuana*" in the United States. The Merida Initiative is a bilateral initiative between the United States and Mexico to form a partnership designed to improve citizen safety in both Countries by, among other objectives, reducing the demand for drugs, including "*Marijuana*," on both sides of the border. The U.S. Congress has appropriated $2.1 Billion for this partnership with Mexico since the Merida Initiative began in Fiscal Year 2008.

62.     The United States meets each of the foregoing bilateral initiative, Treaty, and trade obligations pursuant to the requirements of Articles 3 and 14 of the 1988 Convention by prohibiting the cultivation, manufacture, distribution, and/or possession of Marijuana, and further prohibiting the aiding and abetting of such cultivation, manufacture, distribution, and/or possession.

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 33 of 48

## Alaska Marijuana Ballot Initiative No. 2 (2014)

63. The Alaska Marijuana Ballot Initiative was passed in the State of Alaska at the biennial regular election held on November 4, 2014. The voters in the State of Alaska approved the Ballot Initiative, resulting in its adoption as "*Statutes*" of the State of Alaska.

64. Section 17.38.010 of the Alaska Marijuana Ballot Initiative includes among its "*purposes and findings*" that "*In the interest of the efficient use of law enforcement resources, enhancing revenue for public purposes, and individual freedom, the people of the state of Alaska find and declare that the use of marijuana should be legal for persons twenty-one years of age or older and taxed in a manner similar to alcohol.*" Section. 17.38.020 further declares that: selling, distributing, or transferring Marijuana to individuals of twenty-one years of age or older is legal; and Section 17.38.070 declares "*a retail marijuana store with a current, valid registration, or a person 21 years of age or older who is acting in his or her capacity as an owner, employee or agent of a retail marijuana store .... will be permitted to conduct sales of marijuana*"; and Section 17.38.090 establishes a "*Board*" which shall establish "*labeling requirements for marijuana and marijuana products sold or distributed by a marijuana establishment.*"

65. The Alaska Marijuana Ballot Initiative mandates at Section 17.38.080 that the Alaska State Legislature shall establish a Marijuana Control Board which is to "*adopt regulations [which] shall not prohibit the operation of marijuana establishments, either expressly or through regulations that make their operation unreasonably impracticable.*" see Section 17.38.090.

66. The Alaska Marijuana Ballot Initiative among other things, provides at Section 17.38.080 that the legislature may create a "*Marijuana Control Board*" in the "*Department of Commerce, Community, and Economic Development*" or its successor agency to assume the power, duties, and responsibilities delegated to the "*Alcoholic Beverage Control Board*" and gives the "*Board*" the authority to regulate Medical Marijuana and retail Marijuana. The law also created a regulatory framework for retail Marijuana. The law further requires the State licensing authority to promulgate

Petition For A Redress Of Grievance
Case No.  To Be Assigned

34

rules as required by Alaska Marijuana Ballot Initiative, and authorizes the State licensing authority to promulgate other rules *intended to support the commercialization of marijuana cultivation, distribution, and sale under state auspices* with the assistance of the Board.

67.     The Alaska Marijuana Ballot Initiative, as passed, implements certain provisions of the Initiative. Among its provisions, the Marijuana Ballot Initiative: (1) requires recommendations to the Alaska State Legislature regarding criminal laws which need to be revised to ensure statutory compatibility with the Marijuana Ballot Initiative; (2) designates a relatively small number of specified locations where Marijuana may *not* be consumed; (3) labeling requirements for Marijuana and Marijuana products sold or distributed by a Marijuana establishment; (4) health and safety regulations and standards for the manufacture of Marijuana products and the cultivation of Marijuana.

68.     The Alaska Marijuana Ballot Initiative, directly conflicts with federal law and undermines express federal priorities in the area of drug control and enforcement, and enables the retail and other use of Marijuana in the United States.    The State of Alaska's adoption of a law that regulates and supports the commercialization of Marijuana cultivation, distribution, and sale under State auspices with the assistance of the Alaska Department of Commerce, Community, and Economic Development undermines the national enforcement regime set forth in the CSA and reflected in the long standing and well established federal controlled substances enforcement policy and practice as it relates to "*Marijuana*," including the federal government's prioritization of enforcement against Schedule I drugs.   Alaska Marijuana Ballot Initiative also interferes with U.S. foreign relations and broader narcotic and psychotropic-drug-trafficking interdiction and security objectives, and thereby harms a wide range of U.S. interests.    Because the Alaska Marijuana Ballot Initiative attempts to set State-specific drug regulation and use policy, it legislates in an area constitutionally reserved to the federal government, conflicts with the federal drug-control laws and federal drug-control policy, conflicts with foreign policy and relations, and obstructs the accomplishment and execution of the full purposes and objectives of the U.S. Congress – and is therefore preempted.

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 35 of 48

69.     The Alaska Marijuana Ballot Initiative implements State of Alaska's stated legalization and commercialization policy for "*Marijuana*" through a novel and comprehensive program. This program creates a State-supported and State-controlled regulatory and licensing scheme (*Sec. 17.38.080 & Sec. 17.38.090*) which: (1) permits and enables personal cultivation, possession, use, display, purchase, distribution, or transport of Marijuana accessories or one ounce or less of Marijuana, or aiding and abetting another to do so (*Sec. 17.38.020*); (2) allows for and provides licenses to enable the operation of Marijuana-cultivation facilities, Marijuana-and Marijuana-products-manufacturing facilities, licensed marijuana-testing facilities, and licensed retail establishments to sell Marijuana, including the transportation, distribution, advertising, packaging, and sales in support of these licensed operations (*Sec. 17.38.070*); (3) prohibits regulations which would ban such commercial Marijuana establishments; (4) requires the issuance of a license to operate Marijuana establishments; (5) requires regulation of advertising in support of Marijuana sales; and (6) requires health and safety regulations and standards for the manufacture of Marijuana products. (*Sec. 17.38.090*).

70.     The State of Alaska's pursuit of a policy to promote widespread possession and use and the commercial cultivation, distribution, marketing, and sales of Marijuana, and ignoring every objective embodied in the federal drug control and regulation system (*including the federal government's prioritization of the interdiction of Schedule I drugs including "Marijuana"*), directly conflicts with and otherwise stands as an obstacle to U.S. Congress's mandate that *all* possession and use of Schedule I drugs, including "*Marijuana*," *be prohibited.* This prohibition embodies not just the considered judgment of the U.S. Congress, but also the "*Treaty*" obligations proposed and agreed-to by the United States (*and relied upon by other countries who are similarly obligated*), and are embodied in the U.S. drug control laws and regulations.

71.     Because the Alaska Marijuana Ballot Initiative in both its stated purpose and necessary operation, conflicts with the federal government's carefully crafted balance of competing objectives in the enforcement of federal drug control laws, its passage already has resulted in detrimental foreign policy implications for United States' relations with other countries, including Mexico, Colombia, Bolivia, and Thailand.

72.  The <u>Alaska Marijuana Ballot Initiative</u> has subjected the <u>United States</u> to direct criticism from other Countries and international organizations, including by the <u>International Narcotics Control Board</u> ("<u>*INCB*</u>") (*established by the <u>Single Convention</u>*), which noted in its <u>2013 Report</u> /[59]:

> "We deeply regret the developments at the state level in Colorado and Washington, in the United States, regarding the legalization of the recreational use of cannabis.   *[The Board]* reiterates that *these developments contravene the provisions of the drug control conventions*, which limit the use of cannabis to medical and scientific use only. *[The Board]* urges the Government of the United States to ensure that the treaties are fully implemented on the entirety of its territory."

73.  In its <u>Annual Report</u> for 2014, the <u>International Narcotics Control Board</u> /[60] was again harshly critical of the <u>United States</u>' failure to satisfy the binding obligations of international <u>Treaties</u>:

> Like all international conventions, the United Nations drug control treaties lay out a set of binding legal norms and entrust States with the adoption of legal, administrative and policy measures to implement their treaty obligations. While the choice of these measures is the prerogative of States, such measures must respect the limits that the international community has set for itself in the international legal order. One of the most fundamental principles underpinning the international drug control framework, enshrined in both the 1961 Convention and in the Convention on Psychotropic Substances of 1971, is the limitation of use of narcotic drugs and psychotropic substances to medical and scientific purposes. This legal obligation is absolute and leaves no room for interpretation. (*<u>INCB Annual Report 2014</u>, at <u>iii</u>*)....
>
> The Board reiterates its concern that action by the *[<u>United States</u>]* Government to date with regard to the legalization of the production, sale and distribution of cannabis for non-medical and non-scientific purposes in the States of <u>Alaska</u>, <u>Colorado</u>, <u>Oregon</u> and <u>Washington</u> does

---

[59] Full text of the "2013 Annual Report" of the "International Narcotics Control Board" may be viewed from the Internet at: "http://tinyurl.com/nmd3bht".

[60] Full text of the "*2014 Annual Report*" of the "*International Narcotics Control Board*" from the Internet at: "http://tinyurl.com/jw3b7fv".

not meet the requirements of the international drug control treaties. In particular, the 1961 Convention as amended, establishes that the parties to the Convention should take such legislative and administrative measures as may be necessary "*to limit exclusively to medical and scientific purposes the production, manufacture, export, import, distribution of, trade in, use and possession of drugs.*" This provision is strictly binding and not subject to flexible interpretation. In addition, the Convention establishes that States parties have "*to give effect to and carry out the provisions of this Convention within their own territories.*" This provision also applies to States with federal structures. (*INCB Annual Report 2014, at 25*).

74.    In addition, the leader of the majority political party in Mexico's Congress stated:

> "The legalization of marijuana forces us [*Mexico*] to think very hard about our strategy to combat criminal organizations mainly because the largest consumer in the world has liberalized its [marijuana] laws."

His top aide added:

> "*This changes the rules of the game in the relationship with the United States.*"

75.    The Alaska Marijuana Ballot Initiative in these ways has undermined the international commitments of the United States on foreign policy related to drug control and interdiction.

76.    Numerous other States and localities subsequently have passed or are contemplating passing legislation similar to the Alaska Marijuana Ballot Initiative. The development of various conflicting State and local drug legalization and regulation policies to enable commercial trafficking in Marijuana – or other narcotics and psychotropic substances – would result in further and significant damage to: (1) U.S. foreign relations; (2) the United States' ability to fairly and consistently enforce our federal drug laws, prevent interstate and international trafficking in controlled substances,  and provide safe and effective drugs to the public for federally approved medical purposes only; and (3) the United States' ability to exercise the discretion vested in the executive branch under the CSA. The ability of the State of Alaska or other States and cities to enact a "*patchwork*"

of Marijuana laws – in conflict with federal law – would create an enforcement scheme full of conflicts and contradictions, and in violation of American national and international commitments.

### Sec. 17.38.020 of Alaska Ballot Initiative No. 2

77.     Section 17.38.020 of Alaska Marijuana Ballot Initiative is entitled "*PERSONAL USE OF MARIJUANA.*" It provides that "*Notwithstanding any other provision of law*" certain acts "***are not unlawful** and **shall not be an offense** under State of Alaska law or the law of any locality within the State of Alaska or be a basis for seizure or forfeiture of assets under State of Alaska law for persons twenty-one years of age or older.*" [*Emphasis added*].

78.     The acts which Section 17.38.020 deems lawful notwithstanding any other provision of law – including the CSA – are:

- Possessing, using, displaying, purchasing, or transporting marijuana accessories or one ounce or less of marijuana;

- Possessing, growing, processing, or transporting no more than six marijuana plants… and possession of the marijuana produced by the plants on the premises where the plants were grown, provided that the growing… is not conducted openly or publicly, and is not made available for sale;

- Transfer of one ounce or less of marijuana without remuneration to a person who is twenty-one years of age or older;

- Consumption of marijuana…; and

- Assisting another person who is twenty-one years of age or older in any of the acts described in… this subsection.

79.     Section 17.38.020 of Alaska Marijuana Ballot Initiative permits and enables personal cultivation, possession, use, display, purchase, distribution, or transport of Marijuana accessories, one ounce or less of Marijuana, or six Marijuana plants regardless of weight, or aiding and abetting

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 39 of 48

another to do so, a provision of <u>Alaska Marijuana Ballot Initiative</u> which will or has significantly increased the cultivation of, access to, and consumption of Marijuana since its February 24, 2015 effective date.

### *Section 17.38.060 of Alaska Marijuana Ballot Initiative No. 2*

80. <u>Section 17.38.060</u> of *Alaska Marijuana Ballot Initiative No. 2* is entitled "*MARIJUANA ACCESSORIES AUTHORIZED.*" It provides that "*Notwithstanding any other provision of law*" certain acts "***is lawful and shall not be an offense under Alaska law or the law of any political subdivision of Alaska** or be a basis for seizure or forfeiture of assets under Alaska law for persons 21 years of age or older to manufacture, possess, or purchase marijuana accessories, or to distribute or sell marijuana accessories to a person who is 21 years of age or older.*" [*Emphasis added*].

### *Section 17.38.070 of Alaska Marijuana Ballot Initiative No. 2*

81. The acts which <u>Section 17.38.070(a)</u> deems lawful notwithstanding any other provision of law including the <u>CSA</u> – are:

- Possessing, displaying, storing, or transporting marijuana or marijuana products, except that marijuana and marijuana products may not be displayed in a manner that is visible to the general public from a public right-of-way;

- Delivering or transferring marijuana or marijuana products to a marijuana testing facility;

- Receiving marijuana or marijuana products from a marijuana testing facility;

- Purchasing marijuana from a marijuana cultivation facility;

- Purchasing marijuana or marijuana products from a marijuana product manufacturing facility; and

- Delivering, distributing, or selling marijuana or marijuana products to consumers.

82.     Section 17.38.070(b) - Notwithstanding any other provision of law, **the following acts**, when performed by a marijuana cultivation facility with a current, valid registration, or a person 21 years of age or older who is acting in his or her capacity as an owner, employee or agent of a marijuana cultivation facility, **are lawful and shall not be an offense under Alaska law** or be a basis for seizure or forfeiture of assets under Alaska law:  [*Emphasis added*]

- Cultivating, manufacturing, harvesting, processing, packaging, transporting, displaying, storing, or possessing marijuana;

- Delivering or transferring marijuana to a marijuana testing facility;

- Receiving marijuana from a marijuana testing facility;

- Delivering, distributing, or selling marijuana to a marijuana cultivation facility, a marijuana product manufacturing facility, or a retail marijuana store;

- Receiving or purchasing marijuana from a marijuana cultivation facility; and

- Receiving marijuana seeds or immature marijuana plants from a person 21 years of age or older.


83.     Section 17.38.070 (c) - Notwithstanding any other provision of law, **the following acts**, when performed by a marijuana product manufacturing facility with a current, valid registration, or a person 21 years of age or older who is acting in his or her capacity as an owner, employee or agent of a marijuana product manufacturing facility, **are lawful and shall not be an offense under Alaska law** or be a basis for seizure or forfeiture of assets under Alaska law:  [*Emphasis added*]

- Packaging, processing, transporting, manufacturing, displaying, or possessing marijuana or marijuana products;

- Delivering or transferring marijuana or marijuana products to a marijuana testing facility;

- Receiving marijuana or marijuana products from a marijuana testing facility;

- Delivering or selling marijuana or marijuana products to a retail marijuana store or a marijuana product manufacturing facility;

- Purchasing marijuana from a marijuana cultivation facility; and

- Purchasing of marijuana or marijuana products from a marijuana product manufacturing facility.

84. <u>Section 17.38.070(d)</u> - Notwithstanding any other provision of law, **the following acts**, when performed by a marijuana testing facility with a current, valid registration, or a person 21 years of age or older who is acting in his or her capacity as an owner, employee or agent of a marijuana testing facility, **are lawful and shall not be an offense under Alaska law** or be a basis for seizure or forfeiture of assets under Alaska law: [*Emphasis added*]

- Possessing, cultivating, processing, repackaging, storing, transporting, displaying, transferring or delivering marijuana;

- Receiving marijuana or marijuana products from a marijuana cultivation facility, a marijuana retail store, a marijuana products manufacturer, or a person 21 years of age or older; and

- Returning marijuana or marijuana products to a marijuana cultivation facility, marijuana retail store, marijuana products manufacturer, or a person 21 years of age or older.

*Section 17.38.090. Alaska Marijuana Ballot Initiative No. 2*

85. <u>Section 17.38.090</u> is entitled "*RULEMAKING.*" It provides, among other things, that "*Not later than nine months after the effective date of this act, the board shall adopt regulations necessary for implementation of this chapter. Such regulations **shall not prohibit the operation of marijuana establishments**, either expressly or through regulations that make their operation unreasonably impracticable.*" [*Emphasis added*].

86.     The regulations that <u>Section 17.38.090</u> mandates, despite their express conflict with the <u>CSA</u>, the <u>RICO</u> Racketeering Activity Statutes of <u>18 U.S.C. §§ 1961-1968</u> and the <u>Treaty</u> obligations of the <u>United States</u>, "*shall*" include, among others, the following:

- Procedures for the issuance, renewal, suspension, and revocation of a registration to operate a marijuana establishment, with such procedures subject to all requirements of <u>AS 44.62</u>, the Administrative Procedure Act;

- A schedule of application, registration and renewal fees, provided, application fees shall not exceed $5,000, with this upper limit adjusted annually for inflation, unless the board determines a greater fee is necessary to carry out its responsibilities under this chapter;

- Qualifications for registration that are directly and demonstrably related to the operation of a marijuana establishment;

- Security requirements for marijuana establishments, including for the transportation of marijuana by marijuana establishments;

- Requirements to prevent the sale or diversion of marijuana and marijuana products to persons under the age of 21;

- Labeling requirements for marijuana and marijuana products sold or distributed by a marijuana establishment;

- Health and safety regulations and standards for the manufacture of marijuana products and the cultivation of marijuana;

- Reasonable restrictions on the advertising and display of marijuana and marijuana products; and

- Civil penalties for the failure to comply with regulations made pursuant to this chapter.

87.     <u>Section 17.38.090</u> of <u>Alaska Marijuana Ballot Initiative</u> prohibits <u>State</u> regulations which   would ban commercial Marijuana establishments of the type permitted and enabled by Section <u>17.38.070</u>, requires the issuance by <u>State</u> employees of licenses to operate Marijuana

establishments, requires regulation by State employees of advertising in support of Marijuana sales, and requires State employees to develop health and safety regulations and standards for the manufacture of Marijuana products.

88. This permission and enabling in the State of Alaska by Section 17.38.060, Section 17.38.070, and Section 17.38.090, of Alaska Marijuana Ballot Initiative stands in direct opposition to the CSA, the regulatory scheme of which is designed to foster the beneficial and lawful use of those medications on Schedules II - V, to prevent their misuse, and to *prohibit entirely* the possession or use of "*Marijuana*," as one of the controlled substances listed in Schedule I, anywhere in the United States, except as a part of a strictly controlled research project. It also stands in conflict with the RICO Racketeering Activity Statutes of 18 U.S.C. § 1961(1)(D) & § 1963 and in direct opposition to the obligations of the United States as a party to the Single Convention, the 1971 Convention, and the 1988 Convention to *prohibit entirely* the cultivation of Cannabis or Tetrahydrocannabinol except, in limited circumstances, as specifically authorized or regulated by the United States, and the production, Manufacture, extraction, preparation, offering, offering for sale, distribution, sale, delivery on any terms whatsoever, brokerage, dispatch, dispatch in transit, transport, importation, or exportation of any narcotic drug or any psychotropic, specifically including cannabis or tetrahydrocannabinol. The comprehensive federal regulatory scheme also has specific requirements for registration, inventory control, and advertising and packaging for drugs as to which such activities are permissible in some circumstances  (*i.e., because they are not listed on Schedule I*).    Such interference with federal priorities, driven by a State-determined policy as to how possession and use of a controlled substance should be regulated, constitutes a violation of the "*Supremacy Clause*" of the U.S. Constitution.

89. Section 17.38.060, Section 17.38.070, and Section 17.38.090 of the Alaska Marijuana Ballot Initiative conflicts with and otherwise stand as an obstacle to the full purposes and objectives of the U.S. Congress, including to fulfill the "*Treaty*" obligations of the United States pursuant to the international Conventions, in creating a uniform and singular federal policy and regulatory scheme for interstate or intrastate possession and use of controlled substances, a scheme which expressly includes "*Marijuana*," and its regulatory scheme for registration, inventory control, advertising,

Case 1:15-cv-00002-SLG   Document 1   Filed 04/15/15   Page 44 of 48

and packaging for drugs intended for human consumption. The State of Alaska's permission and enabling in direct contravention of these prohibitions also conflicts with and otherwise stands as an obstacle to the full purposes and objectives of the U.S. Congress in creating a comprehensive system of penalties for individuals who are unlawfully in possession of, or using, "*Marijuana*" in the United States in violation of the CSA's scheme for interstate or intrastate possession and use of controlled substances, or who are aiding and abetting another to do so, and for registration, inventory control, advertising, and/or packaging for drugs intended for human consumption.

90. By reason of the foregoing, Respondent's actions have caused, and will continue to cause, substantial and irreparable harm to the Petitioner for which the Petitioner has no adequate remedy except by this action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE SUPREMACY CLAUSE

91. Petitioner incorporate paragraphs 1 through 90 of the Petition as if fully stated herein.

92. Section 17.38.020, Section 17.38.070, and Section 17.38.090 of the Alaska Marijuana Ballot Initiative taken in whole and in part, represent an impermissible effort by the State of Alaska to establish its own Schedule I drug-legalization and drug-regulation policies and scheme, and to directly legalize and commercialize the cultivation, distribution, sale, transportation, and use of "*Marijuana*," as well as the transportation, manufacture, distribution, sale, and use of Marijuana extracts and Marijuana-infused products in violation of the "*Federal Controlled Substance Act*" and the "*RICO*" Racketeering Statutes of 18 U.S.C. § 1961(1)(D) & § 1962. In particular, Section 17.38.020, Section 17.38.070, and Section 17.38.090 conflict with federal law and American foreign policy, contradict the specific Congressional intent of the Controlled Substances Act and related laws enacted by the U.S. Congress, interfere with federal enforcement in areas committed to the discretion of

the United States, and otherwise impede the accomplishment and execution of the full purposes and objectives of federal law and foreign policy.

93. Section 17.38.020, Section 17.38.070, and Section 17.38.090 of the Alaska Marijuana Ballot Initiative violate the "*Supremacy Clause*" of the U.S. Constitution, and are invalid.


## SECOND CAUSE OF ACTION
## PREEMPTION UNDER FEDERAL LAW

94. Petitioner incorporate paragraphs 1 through 93 of the Petition as if fully stated herein.

95. The Alaska Marijuana Ballot Initiative and all existing "*Marijuana Laws*" of the State of Alaska are preempted by federal law, including 21 U.S.C. § 801, *et seq.*, and by U.S. foreign policy.


## PRAYER FOR RELIEF

WHEREFORE, the Petitioner respectfully request the following relief:

1. Under the authority of 28 U.S.C. § 2201(a) for the Court to issue forth a declaratory judgment stating that the Alaska Marijuana Ballot Initiative and all existing "*Marijuana Laws*" of the State of Alaska are invalid, null, and void; or in the alternative; a declaratory judgement stating the "*Rights*" of the Petitioner as a natural born Citizen of the United States and as a citizen of the State to which he was born having access and the authority to use "*Marijuana*" for medical and recreational purposes.

Petition For A Redress Of Grievance
Case No. To Be Assigned                          46

2.  If the Court finds that the "*Control Substance Law*" of The United States of America preempts the "*Marijuana Laws*" of the State of Alaska, the Petitioner moves the Court under the authority of 18 U.S.C. § 1964(a) for a preliminary and a permanent injunction to be issued against the State of Alaska prohibiting the application and implementation of the Alaska Marijuana Ballot Initiative and all existing laws of the State of Alaska that authorize the use of "*Marijuana*" for recreational and medical purposes;

3.  If this Court finds that the "*Marijuana Blanket Policies*" adopted by the U.S. Attorney General of the U.S. Justice Department authorizing the States to legalize "*Marijuana*" for "*Medical*" and/or "*Recreational*" purposes exceeds the "*Theory of Prosecutorial Discretion*" and/or the intent and purpose of the "*Federal Control Substance Law*," the Petitioner moves the Court to issue forth a "*Declaratory Judgement*" stating the "*Marijuana Blanket Policies*" of the U.S. Justice Department are invalid, null and void.

4.  That this Court award the Petitioner his costs in this action; and

5.  That this Court award any other relief it deems just and proper.

/ / / / /

/ / / / /

/ / / / /

Petition For A Redress Of Grievance
Case No.  To Be Assigned

47

Dated this ___15th___ day of the month of ___April___ in the year of our Lord, Jesus the Christ, Two-Thousand and Fifteen.

Seal

*Gordon Warren Epperly*

Gordon Warren Epperly - Petitioner